REUBEN H. WALLER, ADMINISTRATOR OF JOHN A. HALL, *vs.*
ELIAS KEYES.

RUTLAND,
*January,*
1834.

When a partnership is limited by the articles to a particular business, if one of the partners executes a note in the name of the firm, for the purchase of property for other purposes than those for which the partnership was first formed, it is incumbent on the person sueing on such note to prove affirmatively that the other partners consented to the enlargement of their business, or to the purchase.

It is not competent for the other members to show that they disclaimed the purchase to the person making the same, or to any one except to the person who made the sale.

The previous assent to the purchase may be proved by the subsequent conduct of the partners.

This was an action on a note against Elias Keyes & Co. Service was made on Elias Keyes only. Plea, non-assumpsit. The plaintiff, after proving the signature of the note herein-after mentioned to be in the hand writing of Ephraim W. Bisbee, offered in evidence, in support of his declaration, a note in writing, in the words and figures following, to wit:

"On the 8th day of December, 1830, we promise to pay Frederick Cushman, Jr. or bearer two hundred thirty-three and 30–100 dollars, with interest. This note is given in part payment for a village lot in Norfolk, this day deeded to us by said Cushman. Norfolk, Dec. 8, 1826. E. KEYES & Co.

To the admission of this note the defendant objected, but the court overruled the objection; to which decision the defendant excepted.

The defendant then offered testimony tending to show that said note, with several others of the same date, was given by said Bisbee in the purchase of a certain distillery and lot in Norfolk, New York, in the absence of said Keyes and without his knowledge; and also to show that said Cushman, before and at the time of making the contract with Bisbee, and taking the notes, well knew that the same was done contrary to the will of Keyes; and that Cushman, both before and after the sale, stated that he did not expect Keyes to pay for the distillery, that he relied wholly on Bisbee. To this evidence the plaintiff objected, but the court admitted the same. The defendant thereupon introduced depositions, and also a witness, who testified that he had frequent conversation with Cushman in the summer of 1826, before purchase, who asked him what Keyes said about the purchase; that witness told Cushman that Keyes said he would have nothing to do with it. Cushman then said he did not expect Keyes to pay for the distillery, he

33

RUTLAND,
January,
1834.

Waller
vs.
Keyes.

relied wholly on Bisbee—that Keyes did not come to Norfolk until the January after the sale. Witness also had conversation with Cushman after the sale, who said that he did not expect Keyes to pay, but expected Bisbee would pay for the same.

The defendant here closed his testimony.

The plaintiff then read in evidence several depositions.

The defendant offered testimony tending to prove that the said Elias Keyes, whenever he was at Norfolk, where said business was carried on, and where the furnace and works of said firm were situated, after said purchase of said distillery by said Bisbee as aforesaid, disclaimed participating or any interest therein, and refused to settle for the property therein used; all which was objected to by the plaintiff. The court decided that this testimony was inadmissible, except where the same was for the purpose of contradicting a statement made by the plaintiff's witnesses, and therefore excluded the testimony, except the depositions of Copeland and Strong; to which decision the defendant excepted.

The defendant then read in evidence the depositions of Rufus Copeland, George W. Strong and others, and also introduced testimony tending to prove that many hogs were purchased with hollow ware, the property of said company, and put into said distillery by said Bisbee. No evidence was given as to the assent or dissent of the other partners, nor was any question made to the court as to them.

The defendant requested the court to charge the jury as follows:

1. That the written articles of partnership did not authorize Bisbee to make purchase of the distillery and give the copartnership notes, and by so doing he bound himself only, and not his copartner, Keyes.

2. As this was the debt of Bisbee only, and not the debt of Keyes in its inception, Keyes cannot be bound by any subsequent acknowledgment, unless by some engagement or promise in writing.

3. That any carrying on the distillery, or any *mingling* of the same with the furnace business, by the partners of Keyes, would not bind him. Nor would his taking the control of property, which was the avails of both concerns, bind him to the payment of these notes.

4. If the jury find that Keyes declined to be interested in the distillery purchase, and Cushman was so informed at the

time, he then sold entirely on the credit of Bisbee ; and if so, Keyes cannot be bound but by express engagement in writing, and although the jury should believe that he so afterwards conducted as to give the community to understand he was a partner in the distilling business, yet that would not bind him to this past purchase.

RUTLAND,
*January*,
1834.

Waller
*vs.*
Keyes.

5. Keyes is in no way to be prejudiced by the acts of his partners which he could not control. Any acts or concessions to bind him must have been voluntarily and understandingly his own.

6. That the plaintiff has produced no testimony to prove that Mr. Hall, deceased, was ever the owner of this note, and therefore the plaintiff is not entitled to recover.

The court charged the jury, that articles of partnership referred to extended only to the manufacturing of iron, and do not extend to the business of distilling, and would not of itself authorize the agent of the company, or one of the partners, without the knowledge or consent of the others, to purchase a distillery and give the notes of the company therefor—that in this case the burden of proof was on the plaintiff, who, in order to recover, must prove that, the defendant consented that the business of the company should be extended to distilling, and consented to the purchase made by the agent of the company, or the defendant would not be liable on the note. That this consent might be proved by the conduct of the members of the company after the purchase, as well as by their previous declarations to that effect ; and if the defendant, after the purchase, assented to the extending the business of the company to distilling and the purchase of the distillery, the jury might infer his previous assent thereto.

If the jury believed from the acts and subsequent conduct of the defendant, that he agreed to the purchase and carrying on the distillery by the agent of the company for their use and benefit, it was adopting the acts of the agent, and binding upon him as a member of the company.

The jury were further charged, that on a note payable to bearer, a suit may be brought by any one who possesses the same ; and if an administrator brings the note into court as evidence of his claim, he may maintain an action on such note without any other proof that his intestate was the possessor of the note.

That if the defendant took the control of property which

Rutland,
January,
1834.

Waller
vs.
Keyes.

was the avails of both the furnace and distillery, it would not of itself bind him to the payment of the note, and would afford but very slight, if any, evidence of his assent. And further, that if the defendant did assent at any time to the purchase of the distillery, to charge him with the payment of the note, such assent must have been given understandingly, and when he was in possession of his reasoning faculties; and that any acts or concessions made by him when he did not understand what he was about, from whatever cause it arose, would be no evidence of his assent to the purchase of the distillery.

Exceptions to this charge were taken by the defendant and allowed, and are now certified to this court for their consideration.

*I. N. Cushman, for defendant,* contended, 1. The written articles of partnership did not authorize Bisbee to make purchase of the distillery and give company notes. So the court charged.

2. If, then, he did not bind Keyes by this purchase, he bound himself; and the distillery became his, and he alone was bound to pay for it.

3. If Bisbee had bound himself, and himself only, the subsequent acts and sayings of Keyes could not bind him at law to pay these distillery notes, for the payment of which he, Keyes, was not principally liable. For, it is the debt of a third person, and the statute renders void his sayings or doings, unless evidenced by writing.

That the commingling of the distillery business with that of the furnace by Bisbee, after the purchase, or by any of Keyes' partners, would not bind Keyes to pay the notes which were given by Bisbee for the distillery; nor would Keyes' controlling that mixed property afterwards make him liable to pay them, especially as Keyes disclaimed the purchase at the time, and all the time after and before, or as soon as he knew of the purchase. Wat. 135, 184. If, therefore, our reasoning be correct upon these points, did the charge of the court sustain them?

1. It is contended that the charge of the court in the second sentence, as the case makes it, is erroneous in this—that the word consent is used in so indefinite a sense, that the jury might have construed it to mean that any *as*sent or *con*sent would bind him; which, it is believed, is not law.

2. The charge is objectionable in the next sentence, to wit:

RUTLAND,
January,
1834.

Waller
vs.
Keyes.

that this *consent* might be proved by the *conduct* of the members of the company after the purchase.   It is believed that the *conduct* of the members of this furnace company, either before or after the distillery purchase, could not charge Keyes on these notes, unless there was a primary liability.   Neither could their *sayings* bind *him* at any rate, and hence the jury might *well* have been and probably were misled.

Again, the court say, if the defendant assented to extending the business of the company to distilling after purchase, the jury might infer his previous assent thereto.   This does not follow, because he might have entered into partnership with them in distilling after the purchase, as well as any third person ; and hence it is believed previous assent cannot be either logically or legally inferred.

Again, the court charge, that if the jury believe from the acts and subsequent conduct of defendant, that he agreed to the purchase and carrying on of the distillery, he is bound.   Here then *acts* and *conduct* are made the foundation of Keyes' liability on these notes.   But the *kind* of *acts* or *conduct* is not mentioned or specified by the court in the charge.   Such acts and conduct, if binding at all in this case, make a mixed question of law and fact, which should have been separated by the judge, and not left to the mere caprice of the jury.   But again, we deny that *acts* or *conduct* can bind in this case.   See Watson, 135.   4 T. Rep. 720.

Again, the latter part of the charge conflicts with the foregoing part of the charge.   It is there said, " acts and conduct will bind him to the primitive contract;" but it is here said, " *acts*, or *control*, (meaning the same thing) furnish but slight, if any, evidence of assent.   These two positions virtually contradict each other, and are peculiarly well calculated to mislead the jury.

*Waller and Ormsbee for plaintiff.*—A promissory note need not be set forth in the very words in which it was made ; it is sufficient to describe it according to its legal effect ; and a variance that does not interfere with its legal operation is immaterial. 1 Chitty's Plead. 297, 307.   *Ferguson* vs. *Harwood,* 7 Cranch's Rep. 408.   7 John. Rep. 321—8 do. 26—9 do. 82.   2 Dewey's Rep. 528—3 do 159.   Chitty on Bills, 365.   2 Camp. Rep. 306.

" If, in an action on a promissory note, the plaintiff unne-

RUTLAND,
January,
1834.

cessarily specifies wherein the *value received* consists, he must prove it as laid."—*Jerome* vs. *Whitney*, 7 John. Rep. 321.

Waller
*vs.*
Keyes.

If, after the formation of a partnership, a purchase be made by one partner on company account, beyond the limits of their regular business, subsequent assent, whether verbal or written, will bind the other partners. So if they silently acquiesce in such purchase after it comes to their knowledge, it is equivalent to express assent, and such purchase will be regarded as a company purchase in the beginning. 2 B. & A. 673—*Sandilands* vs. *Marsh & Curd.* Gow on Part. 56.

The plaintiff may give in evidence the defendant's declarations that make against his interest, and such evidence can only be rebutted by evidence to contradict it other than that of the defendant's *own* declarations.

Possession is *prima facie* evidence of negotiable paper, payable to bearer, or endorsed in blank, and he need not account for his possession unless suspicion be raised.—3 Kent's Com. 51. The administrator may maintain an action in his capacity of administrator on such note, as the legal representative of the intestate, and invested with the same legal rights.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—The testimony on which the verdict in this case was taken is introduced into the bill of exceptions. The jury have passed upon the facts. The law on the subject is very simple, and we see no reason to disturb their verdict. The first question which has been presented is a question in relation to the variance between the declaration and the note given in evidence. This, however, has been abandoned in the argument. It appears that the court having decided that the articles of partnership originally entered into by the defendant and others did not extend to the business of distilling, or authorize the purchase of a distillery, the plaintiff introduced testimony to prove that the defendant, Keyes, consented to the enlargement of the business originally undertaken by the firm, and to the purchase of the distillery. It appears that testimony to that effect was introduced, and that there was contradictory testimony. On this testimony the jury have decided. It appears that the defendant offered testimony to show that he disclaimed participating in the purchase of the distillery. This was properly rejected by the county court. The plaintiff was bound to prove affirmatively, that the defendant did consent to the pur-

chase ; and if there was proof to this effect, the defendant could not by his declarations of disclaiming to have any thing to do with the distillery, create testimony to be used in a time of need. After the testimony was given, the defendant requested the court to charge the jury as stated in the bill of exceptions ; and the question is, whether he was entitled to such a charge. I would here remark, that it is the duty of the court to decide on all the questions of law which arise in the course of the trial, but that requests to charge on supposed facts, or on points particularly stated, and which are not called for by the testimony, are not entitled to much consideration ; as a charge, following the request, would frequently mislead and confound a jury. So far as such requests are calculated to remind the court of the questions which are proper to be presented to the consideration of the jury, they are entitled to attention ; but from my experience, I am convinced, that to follow a written request, and charge a jury on each particular request, and on the supposition that certain facts may exist or be in evidence, is more apt to confuse and to distract their attention from the points which really arise, than to aid them in their deliberations. In the case under consideration, it was surely unnecessary to request a charge on the first particular, as that question had already been decided, and the whole trial had proceeded upon the ground that the position was correct. The second request assumes as a fact the whole subject in controversy. If the debt was a partnership debt, and it must be so found or the defendant would not be liable, it was not the debt of Bisbee only in its inception. The fourth request is liable to the same objection. The third and fifth requests were entirely in relation to the effect of certain parts of the testimony, and were rather for the purpose of having the court endorse an argument, than for the purpose of enlightening or directing the jury on a point where they would be likely to err. It has been urged that the charge of the court was objectionable, that the word " consent" is used in too indefinite a sense. I apprehend, however, there is no difficulty in understanding what was meant by the term ; and it is difficult to see what question of law can arise from the use of that term. It would be somewhat strange, if we should find any jury in the country, who, when they were told that they must find the consent or assent of a man to a particular transaction, would be at any loss either in understanding the term or ascertaining the fact from the testimony. It is con-

Rutland,
January,
1834.

tended that the jury were improperly told that this consent might be proved by the conduct of the members of the company, and that they might from this charge infer the consent of the defendant from the acts of Bisbee or the other members of the company. If such an inference could have been drawn by the jury, the charge would undoubtedly have been erroneous. There is an inaccuracy in stating the case in this particular. But the proposition laid down by the court, when taken in connexion with the other parts of the charge to the jury, is undoubtedly correct, and was not calculated to mislead the jury. As a general proposition, and in answer to a request made in terms which are general, the instructions to the jury were right; for it is undoubtedly true, that when an attempt is made to charge the members of a company with the act of one, the consent of the members may be proved by their conduct; and it is upon the evidence furnished by their conduct only, that persons dealing with them can rely to show the nature and extent of their business, and the persons composing the firm. The articles of partnership are with the parties, and are not made public; and it is only from the conduct of the individuals composing the firm, by their declarations, and by what they hold out publicly to view, that people can ever learn who compose a firm or copartnership, and what is the nature of their business. It is equally true, that any person, whether as a member of a company or not, may adopt the acts of his agent, or one of the firm of which he is a member, and thus give efficacy to that which would otherwise not be binding; and it is also true, that we may frequently infer by subsequent conduct a previous intention or consent to a particular transaction. If, from this part of the charge, it could have been supposed that the acts of Bisbee or of the other members of the company could bind the defendant, Keyes, then it would have been objectionable. But it appears that no evidence was given in relation to the assent or dissent of the other members of the firm; of course that was not in issue in the case. If the acts of Bisbee were to have any effect, the case would not have gone to the jury, as he had already signed the note for the firm. Nothing else could have been understood then as referred to in the charge, but the acts of Keyes, the defendant; and this would have been the understanding of any plain, rational man, even if it had been unaccompanied by any further explanation. When taken in connexion with what was said both before and after,

RUTLAND,
January,
1834.

Waller
vs.
Keyes.

there was no possibility of any mistake or misapprehension; but the jury must have turned their attention solely to what was the whole and only subject of inquiry during the trial, viz: the acts and conduct of Keyes, the defendant, as testifying his assent to the purchase of the distillery and extending the business of the firm to that particular business. The charge in relation to the defendant taking control of the property which was the avails of both the furnace and distillery, has been objected to as being inconsistent with some other parts of the charge. This, however, is not perceived. It was wholly immaterial, and not called for from any thing which was in evidence, but appears to have been in answer to a particular request of the defendant's counsel. It is said, however, that the acts and conduct of Keyes, which testified his consent, are not mentioned; that here is a mixed question of law and fact, which should have been separated by the judge. The acts and conduct here referred to are those which the defendant noticed in his fourth request; those which had been given in evidence, commented upon by counsel, and had been the subject of long and labored argument. It would have been improper to have enumerated them specifically in the bill of exceptions; and as to its being a mixed question of law and fact, it is difficult to see what question of law could here have arisen, which required any judicial notice in the charge to the jury; and it is not seen that there is any such mixed question of law and fact as is supposed.

On the whole, we can see no questions of law arising in this case, on which the county court made an erroneous decision; none incorrectly stated in the charge to the jury. The jury have found from the testimony, that this partnership, of which Bisbee and the defendant were members, although it did not originally embrace the business of distilling, was extended to it by their consent; that a distillery was purchased for their mutual benefit, with their consent, and for their common profit, the deed of which was taken to the partners by name, and the legal interest to a proportionate share of which is now in the defendant, Keyes; and from these facts, they have returned their verdict against the defendant. We see no reason for setting it aside, and the judgment of the county court is therefore affirmed.