## Commercial Register Company, Appellee, v. W. D. Drew, Appellant.

### Gen. No. 5560.

1. CONTRACTS—*when right of rescission does not exist.* If no right of rescission is reserved and no breach is committed by the vendee the vendor has no right to rescind an order for merchandise.

2. CONTRACTS—*what not essential to recovery of purchase price.* Actual delivery of merchandise ordered is not essential to the recovery of the purchase price.

3. VENDOR AND VENDEE—*remedies of vendor upon refusal of delivery tendered.* The vendor may pursue any one of 3 courses: (1) The vendor may store the goods for the vendee, give notice that he has done so and then recover the full contract price. (2) He may keep the goods and recover the excess of the contract price over and above the market price at the time and place of delivery. (3) He may sell the goods to the best advantage and recover of the vendee the losses if the goods fail to bring the contract price.

4. SALES—*when title passes without delivery.* The sale of a

specific chattel passes the property in it to the vendee without delivery.

Action commenced before justice of the peace. Appeal from the Circuit Court of Lee county; the Hon. RICHARD S. FARRAND, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed March 13, 1912.

BROOKS & BROOKS, for appellant.

C. W. BREWSTER and WILLIAM H. WINN, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

On September 7, 1909, appellant gave appellee a written order for the manufacture and shipment to him at Dixon, Illinois, of a commercial cash register, for which he paid $15 in cash and gave a note for $120 payable in installments of $10 per month. This order or contract provided that upon a failure to promptly pay any deferred payment, the full amount of the purchase price remaining unpaid should become due and payable immediately; that the title to said register should not pass from appellee until the note given for the same was paid in full; that the bringing of a suit for the price of the register should not operate to vest the title thereto in appellant; that said register should remain the property of appellee until any judgment recovered for its price was paid, and that the contract should not be countermanded. Twenty days after giving the order, when the register was about ready for shipment, appellant wrote appellee to cancel the order. Appellee received the letter at Buffalo, N. Y., two days later and immediately replied that the register was made up special and would be ready for shipment soon and would "go out as per special construction order," and that it would not cancel the contract. Two days later the register was shipped to appellant at Dixon, Illinois, subject to his order. He refused to receive

it, and though frequently requested, refused payment as the installments became due.  September 19, 1910, appellee sued appellant before a justice of the peace of Lee county to recover on the note or the contract price of the register, where appellant obtained a judgment.  On an appeal to the Circuit Court of said county the case was tried upon a stipulated state of facts without the intervention of a jury and appellee obtained a judgment for $124.88 the amount then due on the note, from which this appeal is prosecuted.

No question is raised that the giving of the note in any way changed the contract as between the parties, and the question here presented for our decision involves the rule of law governing the rights of the parties subsequent to its making.  "The note and written agreement as to the mode in which it should be payable having been executed together, are to be construed as one agreement."  Bradley v. Marshall, 54 Ill. 173. We shall so treat the note and the contract contained in the record before us.

It is contended that the letter countermanding the order cancelled the contract.  Appellant's undertaking to pay the stipulated price was contingent only on the conditions that appellee would manufacture and ship the register to him at Dixon.  He agreed absolutely that upon the happening of these conditions he would pay the installments on the note as they matured.  There was no reservation of the right of rescission in the contract, but on the contrary it was expressly agreed that it should not be countermanded. The register was substantially completed when appellee received the letter countermanding the order.  Appellant did not claim the right to terminate the contract because of any default on appellee's part, but sought to do so because he had a chance to sell his business and would have no use for the register himself.  Appellant had no right to rescind the contract unless appellee had failed in some substantial man-

ner to observe his part of the contract. Weintz v. Hafner, 78 Ill. 27. There was no failure on appellee's part to perform its undertaking. No contract can be rescinded by one of the parties unless both can be restored to the conditions in which they were before the contract was made. The register was "made up special" and the rescission of the contract would not restore the parties to their original condition.

The trial court held the measure of damages to be the contract price.

It is contended that there can be a recovery of the contract price only where the title has passed, and that the title to the register never passed to appellant by actual delivery to him, but that the title remained in appellee. We do not think an actual delivery of the register or an acceptance of it was necessary to the recovery. It was doubtless intended by the parties that the contract be performed by the shipment of the register, as ordered. One of the strong evidences that it was so intended is gathered from the agreement of the parties that the contract should not be countermanded. If, as appellant contends, the contract was executory, on the shipment of the register it became executed so far as appellant's rights are concerned. If there has been no delivery of personal property the seller who has offered performance on his part may consider the property as the purchaser's and may either sell it and sue for the unpaid balance of the price, or may hold it subject to the call or order of the purchaser and recover the whole price. 3 Parsons on Contracts, 9th Ed., p. 209. The difference between the contract price and the market value at the time and place of delivery is a proper measure of damages for a failure to receive personal property, and in very many cases suits have been brought for such damages. The vendor often chooses to retain the title to the property and recover the difference between the value and the contract price, but if the prop-

erty remains in his hands, he is not obliged to consider it as his own. The rule in this state is that the vendor may elect to sue for damages or treat the property as the property of the vendee, notwithstanding a refusal to accept it, and sue upon the contract for the whole contract price. In Bagley v. Finlay, 82 Ill. 524, it was said that when a vendee of goods sold at a specific price refuses to take and pay for the goods, the vendor may store them and give notice that he has done so and then recover the full contract price, or he may keep the goods and recover the excess of the contract price over and above the market price of the goods at the time and place of delivery. In a case like this the vendor may pursue any one of three courses: First, the vendor may store the goods for the vendee, give notice that he has done so, and then recover the full contract price; second, he may keep the goods, and recover the excess of the contract price over and above the market price at the time and place of delivery; third, the vendor may sell the goods to the best advantage, and recover of the vendee the loss, if the goods fail to bring the contract price. Ames v. Moir, 130 Ill. 582; Trunkey v. Hedstrom, 131 Ill. 204; Osgood v. Skinner, 211 Ill. 229; Comstock v. Price, 103 Ill. App. 19. The authorities are not uniform on that subject, but the rule stated is the one adopted by the courts of this state. Appellee followed the first course, and on appellant's refusal to accept the register, left it in the Illinois Central depot at Dixon and notified appellant thereof, and he could, at any time, have taken it. We are of the opinion that the fact that the title was not to pass until payment was completed does not change the rule. Appellant was entitled to the possession of the register at once and to use it and would have retained the possession and use if he had paid the installments as they became due. We conclude then, that the trial court did not err in holding that the contract price was the proper measure of damages.

There is another ground which we think supports the holding of the trial court that the contract price was a proper measure of recovery under the facts in this record. The register was the sale of a specific chattel. In 3 Sutherland on Damages, 3rd Ed., Sec. 644, it was said: "The sale of a specific chattel passes the property in it to the vendee without delivery, and the risk of property which is the subject of a sale attends the title. But where the sale is of goods generally, no property in them passes until there is a subsequent appropriation according to the contract of the goods to which it applies. Where by the contract itself the vendor appropriates to the vendee a specific chattel, and the latter thereby agrees to take that chattel and to pay the stipulated price the parties are then in the same situation as they would be after a delivery of goods in pursuance of a general contract. The very appropriation is equivalent to delivery by the vendor, and the assent of the vendee to take the specific chattel and pay the price is equivalent to his accepting possession. The effect of the contract, therefore, is to vest the property in the bargainee." The register was made especially for appellant and placed by appellee where he could obtain possession. The evidence brings the case at bar clearly within the rule laid down in Sutherland on Damages, *supra*.

There is still another reason which we thing justified the trial court in holding that appellee was entitled to recover the contract price of the register; that is, from the terms of the contract itself. The contract is carefully drawn so far as to make clear that the vendor intended to reserve unusual advantages and to impose unusual burdens. We are not to construe equities into the contract, but to carry it out as the parties were content to make it. If a man is willing to contract that he shall be liable for the whole value of a chattel before the title passes, there is nothing to prevent his doing so and thereby binding himself to pay

the whole sum. Mechem on Sales, Vol. 2, Sec. 415 p. 1225; White v. Solomon, 30 L. R. A. 537, 164 Mass. 516; National Cash Register Co. v. Hill, 68 L. R. A. 100, 136 N. C. 272; Nat'l. Cash Register Co. v. Dehn, 102 N. W. 965.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*